UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| MARTIN S., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1813-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Martin S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 13. Plaintiff also filed a reply brief. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**, the Commissioner's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings.

## <u>BACKGROUND</u>

Plaintiff protectively filed his application for DIB on November 6, 2017, alleging disability beginning November 27, 2016, (the disability onset date), primarily due to herniated discs and related back problems. Transcript ("Tr.") 174-75, 202. The claim was denied initially on February

8, 2018, after which Plaintiff requested an administrative hearing. Tr. 19. On November 21, 2019, Administrative Law Judge Timothy McGuan (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 19. Plaintiff appeared and testified at the hearing and was represented by Kenneth R. Hiller, an attorney. *Id*. Michael Smith, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on January 16, 2020, finding that Plaintiff was not disabled. Tr. 19-30. On October 19, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's January 16, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

3

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his January 16, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since November 27, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the spine, status post surgery; obesity; and impingement syndrome of the left shoulder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1]  except he requires a sit/stand option at will. He can occasionally do all postural activities. He can never climb ladders, ropes, or scaffolds. He can occasionally reach overhead bilaterally with the upper extremities.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 18, 1969 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[1]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 27, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. 19-30.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on November 6, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 30.

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ erred by assessing limitations caused by Plaintiff's shoulder impairment without a medical opinion. *See* ECF No. 12-1 at 14-16. Next, Plaintiff argues that the ALJ erred by failing to resolve the conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT"). *See id.* at 16-20. Finally, Plaintiff argues that the ALJ's findings with respect to the persuasiveness of the conflicting medical opinions was not supported by substantial evidence. *See id.* at 21-27.

In response, the Commissioner argues that the ALJ reasonably considered the opinion evidence, and substantial evidence supports the ALJ's finding that Plaintiff retained the RFC for a range of light work. *See* ECF No. 13-1 at 7-17. Furthermore, argues the Commissioner, the ALJ's step five finding is supported by substantial evidence because the hypotheticals submitted to the VE accurately reflected Plaintiff's limitations and closely paralleled the RFC, which was also supported by substantial evidence. *See id.* at 18-19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Plaintiff contends that the ALJ erred by assessing limitations caused by Plaintiff's shoulder impairment without a medical opinion. *See* ECF No. 12-1 at 14-16. Plaintiff injured his right shoulder after falling from a step stool on December 6, 2018. Tr. 612, 797. He was seen in the Emergency Department ("ED") at Mercy Hospital. Tr. 604-25. Imaging showed a displaced fracture of the right seventh rib. Tr. 607. Plaintiff was diagnosed with injury to the muscles and tendons of the right rotator cuff; a fractured rib; neck pain; and unspecified head injury. Tr. 612.

Thereafter, on December 7, 2018, Plaintiff presented to orthopedist David M. Fisher, M.D. ("Dr. Fisher"), for evaluation of his right shoulder. Tr. 773-77. Plaintiff reported that he had difficulty lifting his right hand above shoulder level. Tr. 773. Physical examination showed marked limited range of motion with very little ability to forward elevate the right shoulder. *Id*. While Plaintiff's external rotation strength and subscapularis strength were intact, it was noted to elicit pain. Tr. 773-74. Imaging of the right shoulder showed a "grade II AC joint separation" with T2 signal intensity edema within the deltoid muscle surrounding the AC joint, and subscapularis tendinopathy. Tr. 775.

On February 12, 2019, Plaintiff presented to his primary care provider, complaining that the pain in his right shoulder was worsening, and he was now having pain in both shoulders. Tr. 791. Plaintiff reported hearing a "pop and click when turning the wrong way." Tr. 791. On examination, Plaintiff had bilateral muscle tension/tenderness of the thoracic inlet, pain in the right shoulder region, and restricted range of motion. Tr. 792.

Reports from Dr. Fisher from March 2019 indicate that a steroid injection to the right shoulder was performed, and a conservative measure of treatment was developed. Tr. 795. On June 13, 2019, Dr. Fisher diagnosed Plaintiff with right shoulder impingement. Tr. 1175. Subsequently, in September 2019, Dr. Fisher diagnosed Plaintiff with left shoulder impingement. Tr. 1190. He also scheduled Plaintiff for right shoulder subacromial decompression and debridement in October 2019. At his hearing, Plaintiff testified that the surgery had been performed, but he was not doing well. Tr. 43. He also stated that an MRI was being done on his left shoulder with the expectation that surgery would be performed on that shoulder as well. *Id*.

The ALJ found that, as a result of Plaintiff's shoulder condition, he could only occasionally reach overhead bilaterally. Tr. 24. The ALJ noted that he declined to find more significant limitations relative to Plaintiff's use of his shoulders because upon examination, he often exhibited normal strength, and because he was able to cook, clean, drive and work on cars. Tr. 28. Plaintiff complains that the only medical opinions the ALJ found persuasive relative to Plaintiff's physical RFC were the opinions of consultative examiner Michael Rosenberg, M.D. ("Dr. Rosenberg") (Tr. 498-501), and state agency reviewing physician J. Koenig, M.D. ("Dr. Koenig") (Tr. 82-84). *See* ECF No. 12-1 at 14.

Plaintiff contends that the findings of Drs. Rosenberg and Koenig should not have been found persuasive because Dr. Rosenberg was a consultative examining physician who examined Plaintiff on only one occasion and who did not review any of Plaintiff's medical records; and Dr. Koenig never examined Plaintiff and only had access to records through February 2018. *See* ECF No. 12-1 at 27. Plaintiff notes that the period at issue runs through June 16, 2000, the date of the ALJ's decision, and therefore, Dr. Koenig did not see over two years of records. *Id*. Furthermore, Plaintiff alleges that the ALJ's consideration of the opinion evidence was inconsistent because he

found Dr. Rosenberg and Dr. Koenig's opinions persuasive, but found opinions from Plaintiff's treating providers, Angelika Snyder, D.O. ("Dr. Snyder") (Tr. 1195), and Gregory Bennett, M.D. ("Dr. Bennett") (Tr. 908-12), unpersuasive. *See* ECF No. 12-1 at 21-27.

Plaintiff was examined by Dr. Michael Rosenberg on December 15, 2017. Tr. 498-501. Plaintiff endorsed back pain, beginning in 2010, for which he underwent surgery in 2014, 2015, and 2016. Tr. 498. He stated that he had numbness in the left leg radiating to the toes on the left foot, and constant back pain, made worse by bending, and prolonged walking, sitting, and standing. *Id*. On physical examination, Dr. Rosenberg observed Plaintiff to have diminished and painful range of motion of the lumbar spine upon flexion, extension, and diminished range of motion of the bilateral hips upon flexion. Tr. 500. Dr. Rosenberg assessed "mild restrictions for activities that require prolonged interrupted bending heavy lifting and carrying[;] . . . moderate restrictions for activities that require fine manipulation of his feet." Tr. 501.

Dr. Koenig reviewed the evidence of record as of February 8, 2018, including Dr. Rosenberg's examination findings and report, and assessed that Plaintiff could perform light work with occasional postural activities. Tr. 82-84, 506-08. Dr. Koenig considered Plaintiff's history of back pain and surgery but found that objective imaging of Plaintiff's back showed generally mild abnormalities. Tr. 83, 385 (September 2017 x-ray of the lumbar spine showed mild, unchanged anterolisthesis at L3-L4). Dr. Koenig also considered that, upon examination by Dr. Rosenberg, Plaintiff displayed a normal gait and stance, negative straight leg raise tests, full strength in all extremities, and full range of motion in his upper extremities and hips, other than slightly reduced flexion in the hips. Tr. 84, 499-500. Dr. Koenig acknowledged Plaintiff's reduced and sometimes painful lumbar range of motion by limiting Plaintiff to light work with only occasional postural activities. Tr. 84, 395, 403, 407.

Dr. Gregory Bennett submitted a medical opinion regarding Plaintiff's impairments on June 12, 2019. Tr. 908-12. He reported that he had treated Plaintiff monthly since 2015 for back and leg pain. Tr. 908. Dr. Bennett opined that Plaintiff could walk for a quarter of a city block before needing to rest; sit and stand for thirty minutes at one time; and sit, stand, and walk, for less than two hours of an eight-hour day. Tr. 909-10. Throughout an eight-hour day, Plaintiff would need to have periods of walking, lasting for fifteen minutes, every thirty minutes. Tr. 910. Dr. Bennett continued that Plaintiff could occasionally lift and carry less than ten pounds; and occasionally look down, turn his head left or right, look up, and hold his head in a static position. Tr. 911. Further, Dr. Bennett stated that Plaintiff could only occasionally climb stairs, but never twist, bend, crouch/squat, and climb ladders. *Id*. Dr. Bennett limited Plaintiff to reaching with both of his arms, including overhead reaching to 25% of an eight-hour day. *Id*. He also opined that, because Plaintiff's symptoms likely produce good and bad days, Plaintiff would be absent more than four days per month. *Id*.

Dr. Snyder submitted a medical opinion dated November 26, 2019. Tr. 1195. She stated that Plaintiff suffered from chronic low back pain, muscle spasms, chronic numbness/tingling in the left lower extremity, and nerve pain; he had undergone multiple back surgeries and epidural steroid injections; and he was taking multiple medications for his condition, including narcotic pain medication. *Id*. She further opined that Plaintiff could not lift any weight at all, could not sit more than 15-30 minutes at a time or stand more than 15-30 minutes at a time, that he suffers with associated anxiety and depression, and that his medical conditions affect his daily functioning and ability to work. *Id*.

As an initial matter, the Court notes that Plaintiff is incorrect that the ALJ found Dr. Rosenberg's opinion persuasive. *See* ECF No. 12-1 at 21-27. In fact, the ALJ found Dr.

Rosenberg's opinion unpersuasive and incorporated some greater restrictions into his RFC determination. Tr. 28. Specifically, the ALJ found that Dr. Rosenberg's opined "mild limitation in bending, lifting, and carrying [was] not supported by or consistent with the overall record, including the claimant's continued pain and reduced range of motion, suggesting that the claimant should be limited to light work . . . ."). Tr. 28, 501. The ALJ also found unpersuasive the portion of Dr. Rosenberg's opinion assessing moderate restrictions for activities that require fine manipulation of his feet secondary to sensory neuropathy and paresthesia involving his left foot—as it was inconsistent with the overall record, including Plaintiff's often noted good lower extremity strength and full range of motion in his legs. Tr. 28, 501, 403, 417, 437, 440; *see* 20 C.F.R. § 404.1520c(c)(2).

Plaintiff's erroneous reading of the ALJ's persuasiveness finding as to Dr. Rosenberg's opinion aside, the Court is not persuaded that the ALJ's finding that the only limitation caused by Plaintiff's bilateral shoulder impingement was that he was only able to occasionally reach is supported by substantial evidence. The evidence suggests that Plaintiff's shoulder condition was worse than found by the ALJ and warranted an updated opinion. Plaintiff described the pain in his right shoulder and back as unbearable. Tr. 791. In June 2019, orthopedist Dr. Fisher diagnosed Plaintiff with right shoulder impingement (Tr. 1175), and in September 2019, Dr. Fisher diagnosed Plaintiff with left shoulder impingement (Tr. 1190). He also scheduled Plaintiff for right shoulder subacromial decompression and debridement in October 2019. As noted above, Plaintiff testified that the surgery had been performed, but he was not doing well. Tr. 43. He also stated that an MRI was being done on his left shoulder with the expectation that surgery would be performed on that shoulder as well. *Id*.

As Plaintiff notes, Dr. Koenig's review of the record was conducted in February 2018, but the period at issue runs through June 16, 2000, the date of the ALJ's decision, and finding. *See* ECF No. 12-1 at 27. Thus, Dr. Koenig did not see over two years of records, notably records relating to Plaintiff's shoulder impairment. In assessing Dr. Koenig's report, the ALJ noted Plaintiff's shoulder treatment and need for recent surgery, concluding that Plaintiff's "often noted normal extremity strength and ability to perform daily activities, such as cooking, cleaning, driving, and car work, suggests that [Plaintiff] should be limited to positions with only occasional overhead reaching bilaterally." Tr. 28. However, the record contained no medical opinion evidence regarding Plaintiff's functional limitations caused by his shoulder impairments, and the ALJ provided no explanation to tether this limitation to the opinion evidence or to any statements from Plaintiff.

Without "some explanation" from the ALJ "as to the tether between [the] RFC and the non-stale medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018); *see Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *10 (W.D.N.Y. Dec. 17, 2019); *see also Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) ("[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding.") (quotation and citation omitted). Furthermore, this is not a case in which Plaintiff had only minor impairments such that the ALJ "was within [his] discretion to make a 'common sense judgment' concerning [Plaintiff's] limitations, and no medical opinion evidence was necessary." *Lilley v. Berryhill*, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018). "It was necessary for the ALJ to rely upon a medical source's opinion

in considering the limitations, if any, associated with this impairment." *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (ALJ cannot render a common-sense judgment about a claimant's functional capacity where the record "contain[s] complex medical findings and do[es] not suggest only minor impairment).

In sum., there must be some identifiable rationale for the ALJ's conclusion, and, in this case, the ALJ's opinion is lacking in this regard. Accordingly, the Court finds that remand is warranted on this point. On remand, the ALJ should explain why he came up with his conclusion that Plaintiff's shoulder impairment warranted a limitation to positions with only occasional overhead reaching bilaterally.

Relatedly, Plaintiff argues that even if one were to accept the ALJ's RFC finding Plaintiff relative to Plaintiff's bilateral shoulder impingements, the ALJ erred in relying on the VE's testimony regarding the overhead reaching requirements of the jobs he cited. *See* ECF No. 12-1 at 17. This argument likewise has merit. The VE testified that a hypothetical individual with the limitations found by the ALJ could perform the jobs of fundraiser II (DOT 293.357-014), office helper (DOT 239.567-010, and survey worker (DOT 205.367-054). Tr. 30, 59-60. The VE went on to testify that any overhead reaching required by these jobs would be minimal, and definitely less than occasional. Tr. 60.

The Selected Characteristics of Occupations (the "SCO") reported that these jobs all required constant reaching. The SCO defines reaching as "extending the hands and arms in any direction," SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). The definition of reaching as used in the SCO does not exactly correlate with the hypothetical question posed by the ALJ because he only asked the VE about overhead reaching, not other types of reaching. Upon review of the VE testimony, the Court is not persuaded that the ALJ sufficiently clarified how limitations on

Plaintiff's ability to reach overhead would allow him to perform the identified jobs, which, as noted, require frequent and constant reaching.

As this Court has previously found, testimony that a claimant with overhead reaching limitations is capable of performing a job that the DOT describes as requiring "reaching," then, creates at least an apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony. *See, e.g., Maria R. v. Comm'r of Soc. Sec. Admin.*, Case No. 6:20-cv-06988-DB (W.D.N.Y. Sept. 15, 2022) (citing *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019)) ("Testimony that a claimant with overhead reaching limitations is capable of performing a job that the Dictionary describes as requiring 'reaching'," then, creates at least an apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony.")).

Furthermore, *Lockwood* requires that the ALJ first acknowledge the conflict between the SCO descriptions and the VE's proposed jobs for Plaintiff. *Lockwood*, 914 F.3d 87 at 92 (noting that an ALJ has a duty to address such apparent conflicts, and "it is the Commissioner's responsibility to obtain a reasonable explanation for any such discrepancies, and not this Court's obligation to concoct one *post hoc*."). *Id*. Here, the ALJ failed to identify and resolve the conflict between Plaintiff's overhead reaching limitation and the identified jobs, as he was required to do.

Based on the foregoing, the ALJ's finding that Plaintiff was not disabled was not supported by substantial evidence in the record because the ALJ improperly relied on VE testimony that conflicted with the DOT and SCO as it pertained to Plaintiff's reaching limitations. Upon remand, the Commissioner should obtain an explanation concerning this apparent conflict.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address

Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE